UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL BROWN, SR., AND LESLEY McSPADDEN, | ) ) ) | |
| Plaintiffs, | ) ) ) | Cause No: 4:15-cv-00831-ERW |
| vs. | ) ) | |
| CITY OF FERGUSON, MISSOURI, ET AL. | ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## *DEFENDANTS' FURTHER BRIEFING REGARDING ARGUMENT VI*

COME NOW Defendants City of Ferguson, Missouri, Former Police Chief Thomas Jackson, and Former Police Officer Darren Wilson ("Defendants"), and pursuant to this Court's Order (ECF No. 19) for further briefing regarding Argument VI (ECF No. 6, pp. 21–23), state:

### INTRODUCTION

In their Complaint, the Plaintiffs request declaratory relief and injunctive relief "enjoining City's utilization of patrol techniques that demeans, disregard, or underserve its African-American population," and "[a]n Order appointing a compliance monitor over the City of Ferguson's use of force practices and procedures for a period of five (5) years or until such time as the Court determines that the City of Ferguson has fully and effectually trained all of its police officers on the constitutional requirements of the use of deadly force." Pet. Intro., Prayer for Relief. A claim for equitable relief in this matter is improper and should be dismissed as Plaintiffs have not alleged any facts which, taken in a light most favorable to Plaintiffs, confer jurisdiction upon this court by establishing sufficient standing to assert such a claim from either a constitutional or prudential standpoint. Such relief should also be dismissed due to lack of

ripeness and for the failure of Plaintiffs to allege facts which establish each requirement necessary for issuance of a permanent injunction.

## STANDARD OF REVIEW

A federal Court may raise the issue of standing, as it is a matter of subject matter jurisdiction, *sua sponte*.  *See Auto–Owners Ins. Co. v. Tribal Court of Spirit Lake Indian Reservation*, 495 F.3d 1017, 1020 (8th Cir. 2007).  "It is well established that standing is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit."  *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (ripeness doctrine originates from Article III's case or controversy language); *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (stating the question of standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.").  The Eighth Circuit has stated "numerous times that standing is a threshold inquiry that eschews evaluation on the merits."  *City of Clarkson Valley*, 495 F.3d at 569 (internal quotations and citations omitted).  Since the Defendants, at this stage in the litigation,[1] have facially challenged Plaintiffs' claims for injunctive relief, "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)."  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  The Eighth Circuit reviews a decision dismissing a complaint for lack of standing de novo, (*Tarsney v. O'Keefe*, 225 F.3d 929, 934 (8th Cir. 2000)), and "[T]he decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion" (*eBay Inc. v. MerExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

## ARGUMENT

---

[1] Defendants reserve the ability to factually challenge standing at a later point in time, if necessary.

Plaintiffs have failed to plead sufficiently to confer standing, in light of constitutional and prudential limitations, upon this Court.  The doctrine of ripeness also requires dismissal of Plaintiffs' equitable claims.  Finally, Plaintiffs have failed to plead sufficient facts to establish each requirement necessary for this Court to impose the requested injunctions upon the City of Ferguson.  Plaintiffs' request for declaratory[2] and injunctive relief should be dismissed accordingly.  Defendants will address these points in this order.

## I.     Plaintiffs have failed to meet their burden of proof to establish Article III has conferred jurisdiction to this Court over the subject matter.

Federal courts are courts of limited jurisdiction, and may only hear matters that properly fall into their jurisdictional limits conferred by Article III of the Constitution and the statutes enacted by Congress. *Marine Equipment Management Co. v. United States*, 4 F.3d 643, 646 (8th Cir. 1993) (citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (citing, in turn, *Marbury v. Madison*, 5 U.S. [1 Cranch] 137 (1803))).  As this Court has stated, Article III, § 2 of the United States Constitution limits federal jurisdiction to the adjudication of actual cases or controversies. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998).  "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. at 341.  "The doctrines

---

[2] Plaintiffs mention "declaratory" relief once in the introduction portion of their Amended Complaint (ECF No. 20, p. 2).  Plaintiffs have not identified what rights or other legal relations are sought to be declared. 28 U.S.C. § 2201; *see, e.g.,* Smith v. City of Cincinnati, No. 1:12–CV–648, 2013 WL 571842 (S.D. Ohio 2012) (denying injunctive relief where ". . . it remains unclear what specific relief plaintiffs seek and whether this Court has the authority to provide it").  To the extent Plaintiffs request declaratory relief regarding the violation of rights stated, such a request is subsumed by their damages action. *See* Rhodes v. Robinson, 408 F.3d 550, 566 n.8 (9th Cir. 2005): *see also* Toreres v. Allentown Police Dept., 2014 WL 4081477, *12 (E.D. Penn. 2014) ("Declaratory relief is not proper solely to adjudicate past conduct, nor to simply proclaim that one party is liable to another.").  For the reasons stated in this brief, this should further be dismissed for failure of a case of actual controversy within this court's jurisdiction.  Accordingly, Plaintiffs' request for declaratory relief should be dismissed, and Defendants will refer to the relief sought as injunctive throughout this brief. See also City of Los Angeles v. Lyons, 461 U.S. 95, 104 (1983); Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc., 344 U.S. 237, 243–44 (1952).

3

of mootness, ripeness, and political question all originate from Article III's 'case' or 'controversy' language, and similarly jurisdictional in nature." *Id.* at 352.  The following will demonstrate how Plaintiffs have failed to facially plead a cause of action wherein this Court may exercise jurisdiction to render equitable relief in the following order: A) standing in light of constitutional limitations; B) standing in a light of prudential limitations; and C) ripeness. Finally, Plaintiffs have failed to facially plead each and every requirement necessary for this Court to impose the requested injunctive relief.

### A. Plaintiffs have failed to sufficiently allege each and every element of constitutional standing.

 "[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal. . ." *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *see Steel Co.*, 523 U.S. at 89–90; *Braden v. Wal–Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009) ("It is crucial, however, not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive.").  "The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'" *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230–31 (1990).  There is a

> long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record, and that it is the burden of the party who seeks the exercise of jurisdiction in his favor, clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.

*Spencer v. Kemna*, 523 U.S. 1, 10–11 (1998) (internal citations and quotations omitted).

There are three requirements to establish constitutional standing are: First, there must be injury in fact which is a harm suffered that is concrete, actual or imminent, and not hypothetical; second, there must be causation between the plaintiff's injury and the defendant's conduct; and

4

lastly, there must be redressability which is a likelihood the requested relief will redress the alleged injury. *Steel Co.*, 523 U.S. at 103; *see also Lujan v. Defenders of Wildlife*, 504 U.S.555, 560 (1992). Defendant will address the three requirements of constitutional standing in order.

> **1.     Plaintiffs have not pleaded an injury in fact, as their claimed harm is hypothetical.**

Plaintiffs have failed to meet the first requirement to establish constitutional standing: they have not alleged an injury in fact requiring injunctive relief (a harm suffered that is concrete, actual or imminent, and not hypothetical). *See supra*.

"In cases of complaints for injunctive relief, the 'injury in fact' element of standing requires a showing that the plaintiff faces a threat of ongoing harm." *Park v. Forest Service of United States*, 205 F.3d 1034, 1037 (8th Cir. 2000) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–05 (1983)). The *Lyons* Court stated:

> Plaintiffs must demonstrate a "personal stake in the outcome" in order to "assure that concrete adverseness which sharpens the presentation of issues" necessary for the proper resolution of constitutional questions. Abstract injury is not enough. The plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical."

*Lyons*, 461 U.S. at 101–02 (internal citations omitted). "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief. . . if unaccompanied by any continuing, present adverse effects." *Id.* at 102 (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)); *see also Rizzo v. Goode*, 423 U.S. 362, 372 (1976) (finding no constitutional standing where claim rested upon "what one or a small, unnamed minority of policemen might do to them in the future because of that unknown policeman's perception" of departmental procedures).

5

In *Lyons*, the U.S. Supreme Court rejected a plaintiff's argument that he would have a future unconstitutional encounter with the police. *Lyons*, 461 U.S. at 97–98. The *Lyons* plaintiff filed a complaint for damages, injunction, and declaratory relief against the City of Los Angeles and four of its police officers. *Id.* at 97. The plaintiff alleged he was stopped by the defendant officers for traffic violation, he "offered no resistance or threat whatever," and the officers, "without provocation or justification seized Lyons and applied a chokehold. . . rendering him unconscious and causing damage to his larynx." *Id.* at 97–98. The plaintiff requested a preliminary and permanent injunction to bar the City of Los Angeles from the use of control holds. *Id.* at 98.

Rejecting plaintiff's argument he had constitutional standing, the *Lyons* Court held:

> In order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner. Although Count V alleged that the City authorized the use of the control holds in situations where deadly force was not threatened, it did not indicate why Lyons might be realistically threatened by police officers who acted within the strictures of the City's policy. If, for example, chokeholds were authorized to be used only to counter resistance to an arrest by a suspect, or to thwart an effort to escape, any future threat to Lyons from the City's policy or from the conduct of police officers would be no more real than the possibility that he would again have an encounter with the police and that either he would illegally resist arrest or detention or the officers would disobey their instructions and again render him unconscious without any provocation.

*Id.* at 105–06. The Court found "Lyons' assertion that he may again be subject to an illegal chokehold does not create the actual controversy that must exist for a declaratory judgment to be entered." *Lyons*, 461 U.S. at 105.

6

Importantly, the *Lyons* Court stated, "[I]t is no more than conjecture to suggest that in every instance of a traffic stop, arrest, or other encounter between the police and a citizen, the police will act unconstitutionally and inflict injury without provocation or legal excuse." *Id.* at 108; *see O'Shea*, 414 U.S. at 494–99 (finding no standing to sue for injunctive relief where plaintiffs alleged discriminatory law enforcement and inferred future harm based on a pattern of past violative conduct, not the likely enforcement of a statute).

The Supreme Court's decision in *Rizzo v. Goode* is also controlling on this issue.  423 U.S. 362 (1976).  In *Rizzo*, plaintiffs raised a class action suit in federal court on behalf of minority citizens and Philadelphia residents against the Mayor, City Managing Director, and Police Commissioner.  *Id.* at 367.  Plaintiffs alleged "a pervasive pattern of illegal and unconstitutional police mistreatment of minority citizens in particular and Philadelphia residents in general.  *Id.* at 374.  Finding "that the principles of equity nonetheless militate heavily against the grant of an injunction except in the most extraordinary circumstances[,]" the Supreme Court reversed the District Court's requirement that defendants "submit to (the District) Court for its approval a comprehensive program for improving the handling of citizen complaints alleging police misconduct" in accordance with the District Court's opinion.  *Id.* at 365, 379.  The *Rizzo* Court explained:

> Thus the principles of federalism which play such an important part in governing the relationship between federal courts and state governments, though initially expounded and perhaps entitled to their greatest weight in cases where it was sought to enjoin a criminal prosecution in progress, have not been limited either to that situation or indeed to a criminal proceeding itself. We think these principles likewise have applicability where injunctive relief is sought, not against the judicial branch of the state government, but against those in charge of an executive branch of an agency of state or local governments such as petitioners here. . .

> Contrary to the District Court's flat pronouncement that a federal court's legal power to "supervise the functioning of the police department . . . is firmly established," it is the foregoing cases and principles that must govern consideration of the type of injunctive relief granted here. When it injected itself by injunctive decree into the internal disciplinary affairs of this state agency, the District Court departed from these precepts.

*Id.* at 380; *see also Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009) (stating where there is no real need to exercise the power of judicial review in order to protect the interests of the complaining party, allowing courts to oversee legislative or executive action "would significantly alter the allocation of power. . . away from a democratic form of government.").

*Lyons* and *Rizzo* are controlling precedent cited by several other decisions where equitable relief has been requested in 42 U.S.C. § 1983 actions.  *See, e.g., Whitfield v. City of Ridgeland*, 876 F.Supp.2d 779, 787 (S.D. Miss. 2012) (any allegation there was a "reasonable likelihood that in the immediate future [plaintiff] will be stopped and arrested for DUI and that his driver's licenses will be suspended" for failure to submit to a breath test was "far too speculative to satisfy the injury-in-fact requirement of the standing doctrine"); *De Luna v. Hidalgo Cnty., Tex.*, 853 F. Supp. 2d 623, 639 (S.D. Tex. 2012) (denying equitable relief regarding class action where Court could not find substantial likelihood plaintiffs will be stopped and ticketed where the charge carries a fine in excess of the amount the plaintiff could pay); *Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004) ("[A] federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement are unconstitutional."); *Washington v. Vogel*, 156 F.R.D. 676, 681 (M.D. Fla. 1994) (finding *Lyons* rendered the federal courts "impotent to order the cessation of a policy which may indeed be unconstitutional and may harm many persons[,]" but finding the Eleventh Circuit is bound to follow *Lyons*).

8

Plaintiffs have not alleged that (1) all police officers in Ferguson always use lethal force against any citizen whom they happen to encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner.  *See Lyons*, 461 U.S. at 105–06.  Plaintiffs have not alleged that they themselves have been subjected to any lethal force, or that there is sufficient likelihood the City of Ferguson's officers will use lethal force against Plaintiffs at some undetermined point in the future.  Further, Plaintiffs have not alleged that they have been subjected to or are likely in the future to be subjected to the complained-of patrol techniques of Defendant with sufficient likelihood pursuant to *Lyons*.  *See Allen v. Wright*, 468 U.S. 737, 755 (1984) (abrogated on other grounds by *Lexmark Intern., Inc. v. State Control Components, Inc.*, 134 S.Ct.1377, 1387–88 (2014)), finding *Allen* plaintiffs did "not allege a stigmatic injury suffered as a direct result of having personally been denied equal treatment."); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1039 (9th Cir. 1999) (*see infra*) (insufficient likelihood of future injury to warrant equitable relief shown regarding Hispanic and nighttime drivers to be stopped by border patrol).

Accordingly, because Plaintiffs have not alleged an injury in fact, Plaintiffs have failed to meet their burden to sufficiently allege constitutional standing with this Court pursuant to *Lyons* and its progeny.

> **2.     Plaintiffs have not alleged a fairly traceable connection between Plaintiffs' injury and the complained of conduct, and therefore do not meet the causation requirement of standing.**

Assuming *arguendo* that Plaintiffs pleaded an injury in fact, Plaintiffs have failed to meet the second requirement to establish constitutional standing in that they have not shown any causation between their alleged injury and the Defendants' conduct.

9

Causation is the "fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Steel Co v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (citing *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)). "If there is no 'actual' harm, then there must at least be 'imminent' harm." *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1030 (8th Cir. 2014). "Mere speculation" that an injury has or will occur "cannot satisfy the requirement that any injury in fact must be fairly traceable to" the source of the injury. *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1148 (2013). The causation analysis and the facts that must be alleged to show causation must be asserted when one is challenging the legality of government action or inaction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). The extent of the facts that should be alleged will turn on whether the plaintiff himself is the objection of the government action or if the injury is a result of the government action against someone other than the plaintiff. *Id.* at 561–62. Where it is the former, there is "little question" that the government action or inaction has caused injury and that an injunction will redress it. *Id.* Where it is the latter, the burden is much higher, and while "standing is not precluded, it is ordinarily more difficult to establish. *Id* at 562 (internal citation omitted); *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 44-45 (1976); *Warth v. Seldin*, 422 U.S. 490, 504 (1975). The Supreme Court "repeatedly has rejected claims of standing predicated on the right, possessed by every citizen, to require that the Government be administered according to law." *Smith v. Jefferson Cty. Bd. of School Comm'rs*, 641 F.3d 197, 206 (6th Cir. 2011) (quoting *Valley Forge Christian Coll. V. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 482–83 (1982)). A plaintiff must demonstrate standing for each form of relief sought, as a plaintiff may have standing to

{01447706.DOCX;1}

pursue damages but not injunctive relief, depending on the circumstances. *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 890 (7th Cir. 2013).

In *Clapper*, the plaintiffs who raised suit were United States persons whose work required them to engage in sensitive international communications with individuals who they believe were likely targets of surveillance under Section 702 of the Foreign Intelligence Surveillance Act of 1978, 50 U.S.C. § 1881a (2006 ed., Supp. V). *Clapper*, 133 S.Ct. at 1142. The *Clapper* plaintiffs asserted "they can establish injury in fact that is fairly traceable to § 1881a because there is an objectively reasonable likelihood that their communications with their foreign contacts will be intercepted under § 1881a at some point in the future. *Id.* at 1447. The *Clapper* plaintiffs sought a declaration that § 1881a was unconstitutional as well as an injunction against § 1881a surveillance. *Id.* at 1442. The U.S. Supreme Court stated, "The question before us is whether respondents have Article III standing to seek this prospective relief." *Id.*

The *Clapper* Court rejected plaintiffs' standing arguments, stating as follows:

> As an initial matter, the Second Circuit's "objectively reasonable likelihood" standard is inconsistent with our requirement that "threatened injury must be certainly impending to constitute injury in fact. Furthermore, respondents' argument rests on their highly speculative fear that: (1) the Government will decide to target the communications of non-U.S. persons with whom they communicate; (2) in doing so, the Government will choose to invoke its authority under § 1881a rather than utilizing another method of surveillance; (3) the Article III judges who serve on the Foreign Intelligence Surveillance Court will conclude that the Government's proposed surveillance procedures satisfy § 1881a's many safeguards and are consistent with the Fourth Amendment; (4) the Government will succeed in intercepting the communications of respondents' contacts; and (5) respondents will be parties to the particular communications that the Government intercepts. As discussed below, respondents' theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending. Moreover, even if respondents could demonstrate injury in fact, the second link in the above-described chain of contingencies—which amounts to mere speculation about whether surveillance would be under § 1881a or some other authority—shows that respondents cannot satisfy the requirement that any injury in fact must be fairly traceable to § 1881a.

*Id.* at 1147–48 (internal citations omitted).

Plaintiffs here have failed to allege any injury in fact (*see supra*), nor any connection between such injury and Defendant's alleged conduct.  That the Plaintiffs may be stopped at some point in the future by a City of Ferguson police officer and *then* subjected to lethal force cannot be stated as "fairly traceable" to the complained of conduct pursuant to *Clapper*.  Further, as explained *infra*, Plaintiffs' claims appear to involve third-parties not before this court.  *See Lujan*, 504 U.S. at 560.

Accordingly, Plaintiffs have failed to establish the connection between an injury in fact and Defendant's conduct, and have therefore insufficiently alleged constitutional standing.

> **3.      Plaintiffs cannot demonstrate this Court can remedy the claimed injury, and therefore do not meet the redressability requirement of standing.**

Assuming Plaintiff can show an injury in fact and causation, Plaintiff cannot demonstrate that an injunction will redress the claimed injury.

To meet the redressability requirement of standing, Plaintiffs must demonstrate a favorable judicial decision would likely prevent or redress the complained of injury.  *See Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009); *see, e.g., City of Hugo v. Nichols (Two Cases)*, 656 F.3d 1251, 1264 (10th Cir. 2011).  "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).  A showing that the relief requested might redress the plaintiff's injuries is generally insufficient to satisfy the redressability requirement.  *See, e.g., Utah v. Babbitt*, 137 F.3d 1193, 1213 (10th Cir.

12

1998).   When requesting injunctive relief, a party must show "continuing, present adverse effects" to establish redressability. *Steel Co.*, 523 U.S. at 109; *see also O'Shea v. Littleton*, 414 U.S. 488, 496–497 (1974).   Where a plaintiff only alleges past injury, and not a continuing injury or the likelihood of a future injury, injunctive relief will not redress its injury.   *Steel Co.*, 523 U.S. 108. Simply having an interest in deterrence of future injury is insufficient for the purposes of Article III.  *Id*. at 108–09.

Here, Plaintiffs have neither alleged any injury in fact (*see supra*) nor a fairly traceable connection between any injury and the complained of conduct (*see supra*) as it pertains to the injunctive relief sought.   Plaintiffs have not, therefore, laid any groundwork to support the position that the relief sought will redress any harm.   Plaintiffs have not alleged how the complained of harm with respect to the death of decedent and the loss of family relationship can be redressed by the injunctive relief sought.  *See O'Shea v. Littleton*, 414 U.S. at 496–497.

Accordingly, Plaintiffs have failed to sufficiently allege the redressability requirement of constitutional standing, and their request for injunctive relief should be dismissed.

**B.      Plaintiffs have failed to sufficiently allege each and every element of standing in light of prudential concerns.**

In addition to these constitutional requirements, "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing."   *Valley Forge College v. Americans United*, 454 U.S. 464, 474 (1982).   The elements of prudential standing have been explained as follows:

> First, "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claims to relief on the legal rights or interests of third parties." *Warth v. Seldin*, [422 U.S. 490, 499 (1975)].   The Supreme Court has acknowledged, however, the propriety of allowing a litigant to bring an action, on behalf of a third party, when the following three criteria are satisfied:

13

1. The litigant must have suffered an "injury in fact," thus providing him with a "sufficiently concrete interest" in the outcome of the issue in dispute;

2. The litigant must have a close relation to the third party; and

3. There must exist some hindrance to the third party's ability to protect his or her own interest.

Second, even when the plaintiff has alleged a redressable injury which is sufficient to meet the requirements of Article III, the Federal Courts will not adjudicate " 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." *Valley Forge College v. Americans United*, supra at 474–75, 102 S.Ct. at 760, quoting *Warth v. Seldin*, supra at 499–500, 95 S.Ct. at 2205–06. Finally, the plaintiff's claim must "fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.' " *Valley Forge College v. Americans United*, supra at 475, 102 S.Ct. at 760, quoting *Association of Data Processing Service Orgs. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970).

*Allnew v. City of Duluth*, 983 F. Supp. 825, 833 (D. Minn. 1997); *see also Lexmark Intern., Inc. v. State Control Components, Inc.*, 134 S.Ct.1377, 1387–88 (2014).

As this Court has indicated, Plaintiffs have sought to request injunctive relief on behalf of citizens of Ferguson or the United States who are not parties to this action.  ECF No. 19, p. 8; *see* ECF No. 20, ¶¶ 20, 72–73, 80–87, 105, 109, 117, 122–26, 136, 148, 158, 161–62, 167, 180–84, 206, 209, 223, 228.  This Court should exercise prudential restraint to the extent Plaintiffs' claim for equitable relief seeks to enforce rights on behalf of third-parties not before this Court. *Lujan*, 504 U.S. at 560; *Allen v. Wright*, 468 U.S. 737, 755 (1984) (holding that parents lacked standing to challenge tax exemptions for racially discriminatory private schools in part because plaintiffs did "not allege a stigmatic injury suffered as a direct result of having personally been denied equal treatment") (abrogated on other grounds by *Lexmark*, 134 S.Ct. at 1388); *see Obama v. Napolean*, No. 14-CV-10997, 2015 WL 3506026, at *4 (E.D. Mich. June 2, 2015).

14

Further, Plaintiffs claims for equitable relief are abstract questions of wide significance, amounting to a general grievance with the City of Ferguson, which Plaintiffs have alleged is currently being investigated by the United States Department of Justice. *See* ECF No. 20, ¶ 82; *see also Lujan*, 504 U.S. 575 (stating a suit cannot rest upon a "generalized grievance" where "the impact on [plaintiff] is plainly undifferentiated and common to all members of the public") (internal quotations and citations omitted); *United States v. Richardson*, 418 U.S. 166, 176–77 (1974); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217, 220 (1974). For, as the Supreme Court has stated in *Lujan*, the Supreme Court has held that

> an injury amounting only to the alleged violation of a right to have the Government act in accordance with law was not judicially cognizable because assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning."

*Lujan*, 504 U.S. at 575–76. Plaintiffs' claims for injunctive relief fall squarely within the generalized-grievance limitations imposed upon courts explained in *Lujan*.

Pursuant to the above, this Court should exercise prudential restraint and dismiss Plaintiffs' equitable claims as they are generalized-grievances and are raised on behalf of third-parties.

**C.    This Court lacks jurisdiction over Plaintiffs' equitable claims for relief due to ripeness**

The Court should not decide cases "in advance of the necessity of deciding them." *Rescue Army v. Mun. Court of Los Angeles*, 331 U.S. 549, 569 (1947). In order for a case to be ripe, it must have a claim of a "specific present objective harm" or a "threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 14 (1972) (finding allegation of a "chilling" effect or speculation that the Army may misuse surveillance information in a harmful way was

insufficient to support injunctive intervention). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. U.S.*, 523 U.S. 296, 300 (1998) (citing *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 581 (1985)); *Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 243–44 (1952).  As courts may adjudicate concrete legal issues, federal courts do not render advisory opinions of abstractions.  *United Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947).

The two plaintiffs in *Hodgers-Durgin v. De La Vina* alleged that Border Patrol agents stopped their vehicle, searched them, and allowed them to leave after the did not find anything in the vehicle.  *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1039 (9th Cir. 1999). The plaintiffs sought equitable relief for Hispanic drivers and nighttime drivers. *Id.* at 1040. Because both plaintiffs frequently drove past Border Patrol agents, yet were very infrequently stopped, the court ruled that it was not sufficiently likely that the plaintiffs would be stopped again by Border Patrol. *Id.* at 1044. Their claims were not ripe because they rested upon contingent future events that may not occur as anticipated, or at all. *Id.* Whether the plaintiffs would be stopped by the Border Patrol was too speculative to warrant an equitable remedy requiring Border Patrol to change its practices. *Id.*

Here, Plaintiffs allege various unconstitutional practices by the Ferguson Police Department. ECF No. 20 ¶ 87–175, 199–209). Plaintiffs also allege that they lost their son because of allegedly unconstitutional policing. ECF No. 20 ¶ 169. Similar to *Hodgers-Durgin*, it is not sufficiently likely that this injury will occur to Plaintiffs in the future.  Plaintiffs' claims are not ripe because they are resting upon contingent future events which may never occur. Whether the alleged unconstitutional practices would affect Plaintiffs in the future is far too

16

speculative to warrant an equitable remedy requiring changes to the City of Ferguson's practices and procedures.

Accordingly, this Court should refrain from issuing injunctive relief due to a lack of ripeness and should therefore dismiss Plaintiffs' request for equitable relief.

**II.    Plaintiffs' claims for equitable relief should be denied because they cannot meet each and every requirement to support issuance of a permanent injunction.**

The law is clear that an "injunction should issue only if the traditional four-factor test is satisfied." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 157 (2010).  In determining whether an injunction is appropriate, a court may not only consider "whether there is a good reason why an injunction should not issue; rather, a court must determine that an injunction should issue under the traditional four-factor test set out above." *Id.* at 157–58.  It also important to note however that a court should consider whether "a less drastic remedy" is adequate to redress injury.  *Id.* at 165–66 (citing *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 311–12 (1982)). If there exists a less drastic remedy, then the "extraordinary relief" afforded by an injunction is unwarranted. *Id.*

Plaintiffs seeking a permanent injunction must demonstrate that: (1) they suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering balance of hardships between plaintiffs and defendants, remedy in equity is warranted; and (4) public interest would not be disserved by permanent injunction.  ECF No. 19 (citing *Monsanto*, 561 U.S. at 156 (citing, in turn, *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006))).  "The law is well settled that federal injunctive relief is an extreme remedy."  *Simmons v. Poe*, 47 F.3d 1370, 1382 (4th Cir. 1995). Defendants will address how Plaintiffs cannot meet each of these requirements in this order.

17

A.     **Plaintiffs have not shown a likelihood of substantial and irreparable injury, and are therefore not entitled to equitable relief.**

The rule of equitable restraint dictates an "equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and irreparable injury.'" *City of Los Angeles v. Lyons*, 461 U.S. 97, 111 (1983); *see O'Shea v. Littleton*, 414 U.S. 488, 499 (1974).

A federal court is not the proper forum to press claims against local authorities unless the requirements for entry and the prerequisites for injunctive relief are satisfied. *Lyons*, 461 U.S. at 111-12. "[T]he need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the States' criminal laws in the absence of irreparable injury which is both great and immediate." *Id.* at 112. More generally, whenever a court is asked to exercise its equitable powers to oversee state law enforcement authorities, it must be especially mindful of "[t]he special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." *Id.* (citing *Stefanelli v. Minard*, 342 U.S. 117, 120 (1951). Individual States may permit their courts to use injunctions to oversee the conduct of law enforcement authorities on a continuing basis, but this is not the role of a federal court. *Id.* at 113.

*Lyons*, discussed *supra*, is on point and controlling. Plaintiffs have not alleged the failure to grant an injunction will result in irreparable harm. The speculative future exposure of Plaintiffs to the complained of conduct is remote, at best. *Lyons*, 461 U.S. at 112.

Accordingly, Plaintiffs have not shown a likelihood of substantial and irreparable injury, and their claims for injunctive relief should therefore be dismissed.

{01447706.DOCX;1}

**B.**      **Plaintiffs have an adequate remedy at law, and are therefore not entitled to equitable relief.**

"It is a 'basic doctrine of equity jurisprudence that courts of equity should not act…when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief.'" *Morales v. TWA*, 504 U.S. 374 (1992) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974)).

To the extent an individual has "suffered an injury barred by the Federal Constitution, [that individual] has a remedy for damages under § 1983.  Furthermore, those who deliberately deprive a citizen of [that citizen's] constitutional rights risk conviction under the federal criminal laws." *Lyons*, 461 U.S. at 113 (citing *O'Shea*, 414 U.S. at 503); *see also Virginia Petro. Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958) (cited with approval in *Sampson v. Murray*, 415 U.S. 61, 90 (1974)); *Travelers Social Club v. City of Pittsburgh*, 685 F.Supp. 929, 936 (W.D. Penn. 1988).

*Lyons* is again on point and controlling.  Plaintiffs here have an adequate remedy at law in 42 U.S.C. § 1983 for their causes of action regarding use of lethal force and equal protection. Further, as explained in *Lyons*, criminal law provides a forum of further potential intervention.

Accordingly, as Plaintiffs have an adequate remedy of law, this Court should dismiss Plaintiffs' request for an injunction.

**C.**      **Plaintiffs have not shown the balance of hardships between the Plaintiffs and Defendants warrant a remedy in equity.**

When considering balance of hardships between plaintiffs and defendants to determine whether remedy in equity is warranted (*see Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156 (2010)), "the court balances the conveniences of the parties and possible injuries to

19

them according as they may be affected by the granting or withholding of the injunction" (*Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (internal quotations and citation omitted)).

Here, Plaintiffs have not set forth any allegations where, if the requested injunctive relief is denied, they will endure any hardship.[3]  Plaintiffs' request, however, imposes a substantial hardship on the City of Ferguson in responding to a compliance monitor, or to conform its conduct to Plaintiffs' nebulous description (which is otherwise more precisely governed by the Federal Constitution, case law, and the remedy for which is found in 42 U.S.C. § 1983).

Accordingly, Plaintiffs have not met their burden to allege that the balance of hardships weigh in their favor, and this Court should dismiss their equitable claims.

**D.      Plaintiffs have not established that the public interest would not be disserved by a permanent injunction.**

In order to obtain such extraordinary relief as an injunction, Plaintiffs must show the public interest "would not be disserved by a permanent injunction." *Monsanto*, 561 U.S. at 156. Determining whether the public interest would or would not be disserved is discussed in *Winter v. Natural Resources Defense Council Inc*. 555 U.S. 7, 12 (2008). In *Winter*, the Supreme Court reviewed the decision of the lower court to issue a preliminary injunction against the Navy in its use of sonar technology. *Id.* at 370. A preliminary injunction, similar to a permanent injunction, requires a Plaintiff show "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008); *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero–*

---

[3] *See supra* regarding injury in fact, and no concrete injury.

*Barcelo*, 456 U.S. 305, 311–312 (1982). Therefore, the only difference between the burden on a Plaintiff in a request for a preliminary injunction to that of a permanent injunction, is the Plaintiff success on the merits. *Id*.; *see also Monsanto*, 561 U.S. at 157. In addition, "the balance of equities and consideration of the public interest—are pertinent in assessing the propriety of any injunctive relief, preliminary or permanent." *Id*. at 381.

The *Winter* Court found the plaintiffs did not establish an irreparable injury where their claim rested on the "possibility" of harm. *Id*. 375–81. In weighing the interests of the Navy, the court examined how an injunction could affect the Navy's training exercises regarding sonar use. *Id* at 378. In particular, the court found an injunction would impose a burden on the Navy's training operation and that it would likely disrupt training activities for days at a time. *Id*. at 379. The plaintiffs' claim of harm rested on the possible disruption of marine life caused by the sonar, which could disrupt scientific research and also the ability to observe marine life. *Id* at 377. Ultimately, the court found that the interests of the Navy (national security) outweighed the interests of the plaintiff (possible harm to "ecological, scientific and recreational interests"). *Id* at 378.

Courts have also examined public consequences and its effect on non-parties. *See Sammartano v. First Judicial District Court, in and for County of Carson City*, 303 F.3d 959 (9th Cir. 2002) (abrogated on other grounds by *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 129 S. Ct. 365, (2008) *see also Aventure Commc'ns Tech., L.L.C. v. Iowa Utilities Bd*., 734 F.Supp.2d 636, 666 (N.D. Iowa 2010). In *Aventure*, the court noted that examining the economic harm to the parties and third parties is a relevant factor in deciding whether to grant an injunction. *Aventure*, 734 F.Supp.2d at 666 (citing *Baker Elec. Co-op., Inc. v. Chaske,* 28 F.3d

1466, 1472 (8th Cir. 1994).  In addition, *Aventure* stated a court may examine the public interest by determining the purpose of any underlying legislation.  *Id.*

This Court must determine whether the drastic remedy of a permanent injunction over the City of Ferguson would result in a disservice to the public interest.  Here, based on Plaintiffs' allegations, a permanent injunction would result in a disservice to the public. Subjecting the City of Ferguson to a compliance monitor would constitute a hardship. There is also the potential for economic harm to both the City of Ferguson and the public at large for funding such a compliance monitor. Again, the Plaintiffs have not alleged that a denial of injunctive relief will result in any adversity or hardship. As discussed repeatedly, Plaintiffs have and have invoked a redressable remedy at law under 42 U.S.C. § 1983.  *See supra.*  The interests of the public are not served where the actions of a municipality's entire police department are under the control of the court to ensure compliance with the Constitution.  *See Lyons*, 461 U.S. at 113 (stating such a task is not the role of a federal court).

Accordingly, this Court should find that imposing an injunction upon the City of Ferguson would serve as a disservice to the public, and dismiss Plaintiffs' request for equitable relief.

## CONCLUSION

Upon a facial examination of Plaintiffs' Amended Complaint, Plaintiffs have failed to meet their burden to establish entitlement to declaratory relief or injunctive relief. Plaintiffs have not alleged facts sufficient to confer jurisdiction upon this court by establishing standing from either a constitutional or prudential standpoint.   Such relief should also be dismissed due to ripeness and for failure to establish each requirement necessary for issuance of a permanent injunction.

22

{01447706.DOCX;1}

WHEREFORE, Defendants respectfully pray that this Court dismiss Plaintiffs' request for declaratory and injunctive relief, and for such other relief as this Court deems just and proper.

|  | /s/Peter J. Dunne |
|---|---|
|  | Peter J. Dunne   #31482 |
|  | Robert T. Plunkert  #62064 |
|  | PITZER SNODGRASS, P.C. |
|  | Attorneys for Defendants City of Ferguson, Missouri, Former Police Chief Thomas Jackson, and Former Police Officer Darren Wilson |
|  | 100 South Fourth Street, Suite 400 |
|  | St. Louis, Missouri 63102-1821 |
|  | (314) 421-5545 |
|  | (314) 421-3144 (Fax) |
|  | Email: dunne@pspclaw.com |
|  | Email: plunkert@pspclaw.com |

I hereby certify that a copy of the foregoing filed electronically with the Clerk of the Court this 4th day of August, 2015, to be served by operation of the Court's electronic filing system upon the following:

| | |
|---|---|
| Anthony D. Gray | Daryl D. Parks (pro hac vice) |
| 7710 Carondelet Ave., Suite 303 | Benjamin L. Crump (pro hac vice) |
| Clayton, Missouri 63105 | Jasmine O. Rand (pro hac vice) |
| agray@johnsongraylaw.com | 240 North Magnolia Drive |
| Telephone: 314-385-9500 | Tallahassee, Florida 32301 |
| Fax: 314-594-2052 | Telephone: 850-222-3333 |
| Attorney for Plaintiffs | Fax: 850-224-6679 |
| | Co-Counsel for Plaintiffs |

/s/ Peter J. Dunne