**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL BROWN, SR., et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:15CV00831 ERW |
| | ) | |
| CITY OF FERGUSON, MISSOURI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants City of Ferguson, Former Police Chief

Thomas Jackson, and Former Police Officer Darren Wilson's Joint Motion to Partially Dismiss

Plaintiffs' Complaint [ECF No. 5].  As Defendants' Joint Motion to Partially Dismiss Plaintiffs'

Complaint has already been partially resolved by the Court [ECF No. 19], this Memorandum and

Order will discuss only Plaintiffs' request for injunctive relief previously held in abeyance.

**I.      BACKGROUND**

Plaintiffs Michael Brown, Sr. and Lesley McSpadden ("Plaintiffs") initiated this lawsuit

by filing a Petition in the Circuit Court of St. Louis County, State of Missouri on April 23, 2015.

On May 26, 2015, Defendant City of Ferguson ("Defendant City"), Defendant Thomas Jackson

("Defendant Jackson:"), and Defendant Darren Wilson ("Defendant Wilson") removed the

Petition to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.  Also on May 26, 2015,

Defendants filed a Motion to Partially Dismiss Plaintiffs' Petition [ECF No. 5], claiming seven

separate grounds for dismissal.

On July 16, 2015, the Court issued a Memorandum and Order [ECF No. 19] granting, in

part, and dismissing, in part, Defendants' Motion to Partially Dismiss related to Plaintiffs'

1

original complaint.  Counts I[1] and III[2] were voluntarily dismissed by Plaintiffs.  Count II[3] against

Defendant Jackson in his official capacity and Counts IV[4] and VI[5] against Defendant Wilson in

his official capacity were dismissed. Plaintiffs' Equal Protection claim was allowed to proceed

along with Count II against Defendant Jackson in his individual capacity, Counts IV and VI

against Defendant Wilson in his individual capacity, and Count VII against Defendant City.[6]

Defendants' sixth argument  in their Motion to Dismiss on Plaintiffs' requested declaratory and

injunctive relief [ECF No. 6, pg. 21-23], was held in abeyance pending further briefing by the

parties on whether Plaintiffs have constitutional standing to seek declaratory and injunctive

relief.  In its request for further briefing, the Court asked the parties to specifically address the

issue of federalism, in regards to a federal court issuing an injunction against a state agency.

   Plaintiffs filed an Amended Complaint with the Court on July 30, 2015 [ECF No. 20].

On August 4, 2015, Defendants filed their Response to Court Order for further briefing [ECF No.

---

[1] In Count I, Plaintiffs asserted a "Civil Rights Violation" against Defendant Wilson for allegedly violating and depriving Michael Brown, Jr. of his "civil rights to be free from unlawful detention and the use of excessive and deadly force, as well as the deprivation of liberty without due process of law and equal protection of the law."  ECF No. 1-3.  This is not a viable claim under Missouri law.

[2] In Count III, Plaintiffs asserted a "Civil Rights Violation" against Defendant Jackson for "tolerat[ing], permit[ing], fail[ing] to correct, promot[ing], or ratif[ying] a custom, pattern, and practice on the part of city of Ferguson police officers who engage in unjustified, unreasonable, and illegal use of excessive force,  including deadly force."  Like Count I, Missouri law does not recognize this cause of action.

[3] In Count II, Plaintiffs asserted Defendant City and Defendant Jackson failed to properly hire, train, supervise, retain, and conduct a fair and impartial investigation.  The Court held this claim is duplicative, because to make a claim against an employee in his official capacity is in reality a claim against the Defendant City, and that claim remains under Count I of Plaiuntiffs' First Amended Complaint.

[4] In Count IV, Plaintiffs asserted a claim against Defendant Wilson for an "Unconstitutional Stop and/or Detention and Use of Excessive Force in Violation of Amendments IV and XIV of the United States Constitution and 42 U.S.C. § 1983."  Like Count II, the Court held this claim is duplicative, because to make a claim against an employee in his official capacity is in reality a claim against the Defendant City, and that claim remains under Count I of Plaintiffs' First Amended Complaint.

[5] In Count VI, Plaintiffs Michael Brown, Sr., and Lesley McSpadden asserted Defendant Wilson deprived them of their substantive due process rights under Amendment XIV of the United States Constitution and 42 U.S.C. § 1983.  Like Counts II and IV, the Court held this claim is duplicative, because to make a claim against an employee in his official capacity is in reality a claim against the Defendant City, and that claim remains under Count V of Plaintiffs' First Amended Complaint.

[6] In Count VII, Plaintiffs Michael Brown, Sr., and Lesley McSpadden asserted a claim for Defendant City's "Unconstitutional Custom/Policy/Pattern Practice of Substantive Due Process in Violation of Amendment XIV of the United States Constitution and 42 U.S.C. § 1983."  This claim is now Count V of Plaintiffs' First Amended Complaint.

23] on Plaintiffs' claim for injunctive relief and Plaintiffs did the same on August 5, 2015 [ECF No. 25]. In response, the Court issued a second Memorandum and Order [ECF No. 28], again requesting further briefing by the parties as to the question of application of federalism and standing concerns in the demand for injunctive relief, believing they were inadequately addressed. On August 31, 2015, Plaintiffs submitted their second Response to Court Order [ECF No. 30]. Defendants responded to this supplemental briefing on September 10, 2015 [ECF No. 33].

For purposes of this Motion to Dismiss, the Court is required to accept as true facts alleged in Plaintiffs' Amended Complaint. *Great Rivers Habitat Alliance v. Fed. Emergency Mgmt. Agency*, 615 F.3d 958, 988 (8th Cir. 2010). On August 9, 2015, Plaintiffs' son, Michael Brown, Jr., an unarmed, eighteen year-old, African-American male, was fatally wounded when City of Ferguson ("Defendant City") Police Officer Darren Wilson ("Defendant Wilson") shot and killed him. Defendant Wilson was working for the City of Ferguson Police Department that afternoon, when he used his vehicle as a weapon of force, stopping inches from Michael Brown, Jr.'s body, hitting him with his car door, and engaging Michael Brown, Jr. in the aforementioned altercation. Plaintiffs also allege Defendant Wilson's actions are emblematic of Defendant City's pattern, practice, or custom of racial bias directed towards its African-American citizens, as found in a United States Department of Justice report. Plaintiffs allege this same report also acknowledges practices of the Ferguson Police Department disproportionately harming African-Americans, such that 90% of all use of force documented by the Ferguson Police Department is levied against African-Americans who comprise 67% of the Defendant City's population. Without stating a separate claim for injunctive relief, Plaintiffs merely state in their prayer for relief the following paragraphs:

3

(f)  An Order preliminarily and permanently enjoining the Defendant City's utilization of patrol techniques that demeans, disregard, or underserve its African-American population; and

(g) An Order appointing a compliance monitor over the City of Ferguson's use of force practices and procedures for a period of five (5) years or until such time as the Court determines that the City of Ferguson has fully and effectually trained all of its police officers on the constitutional requirements of the use of deadly force.

[ECF No. 20].

## II.     STANDARD OF REVIEW

Under FRCP 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The notice pleading standard of FRCP 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief."   To meet this standard and survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A court accepts "as true all of the factual allegations contained in the complaint," and affords the non-moving party "all reasonable inferences that can be drawn from those allegations" when considering a motion to dismiss.  *Jackson v. Nixon*, 747 F.3d 537, 540-41 (8th Cir. 2014) (internal quotations and citation omitted).  However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010) (internal citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (internal citation omitted).  Additionally, "some factual allegations may be so

indeterminate that they require further factual enhancement in order to state a claim." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

A well-pleaded complaint may not be dismissed, even if it appears proving the claim is unlikely and the chance of recovery is remote. *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007). However, where the allegations on the face of the complaint show "there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Young v. St. John's Mercy Health Sys.*, No. 10-824, 2011 WL 9155, at *4 (E.D. Mo. Jan. 3, 2011) (internal citation omitted). Further, if a claim fails to allege one of the elements necessary for recovery on a legal theory, that claim must be dismissed for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). Bare assertions constituting merely conclusory allegations failing to establish elements necessary for recovery will not suffice. *See id.* ("Plaintiffs, relying on facts not in the complaint, make bare assertions that [defendants] were not just lenders, but owners that controlled the RICO enterprise . . . these assertions are more of the same conclusory allegation . . . "). Courts must assess the plausibility of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (internal citation omitted). This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Generally, the Court may not consider material not contained in the pleadings in determining whether a motion to dismiss should be granted. Any "written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings" constitutes matters outside the pleadings. *Hamm*

*v. Rhone-Poulenc Roer Pharm., Inc.*, 187 F.3d 941 (8th Cir. 1999).  "When matters outside the pleadings are presented on a motion to dismiss, a court may either treat the motion as one to dismiss and exclude the matters outside the pleadings, or treat the motion as one for summary judgment and provide the parties with notice and an opportunity to provide further materials." *Horseshoe Entm't v. Gen. Elec. Capital Corp.*, 990 F. Supp. 737, 740 (E.D. Mo. 1997) (citing *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992)); *see also Trimble v. Asarco, Inc.*, 232 F.3d 946 (8th Cir. 2000) (stating a Rule 12(b)(6) motion should be converted to a summary judgment motion if the matters are not excluded).

## III.  DISCUSSION

Defendants argue Plaintiffs do not have standing, and the Court should dismiss Plaintiffs' request for declaratory and injunctive relief due to lack of any actual controversy.  The requirement for actual controversy refers to justiciable cases and controversies under Article III of the U.S. Constitution.  Consequently, parties must have standing to sue.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998).  There are three requirements to establish constitutional standing.  *Id.*  First, there must be injury in fact, which is a harm suffered that is concrete, actual or imminent, and not hypothetical.  *Id.* at 103.  Plaintiff must have a personal stake in the outcome to establish a concrete injury.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  Second, there must be causation between the plaintiff's injury and the defendant's conduct.  *Steel Co.*, 523 U.S. at 103.  Finally, there must be redressability, which is a likelihood the requested relief will redress the alleged injury.  *Id.*

Plaintiffs' remaining claims in their Amended Complaint [ECF No. 20] are (1) Count I against Defendant City for failure to properly hire, train, supervise, retain, and conduct a fair and impartial investigation; (2) Count II against Defendant Wilson for an unconstitutional stop and/or

detention and use of excessive force in violation of the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C § 1983; (3) Count III against Defendant City for Defendant City's custom, policy, pattern, or practice of unreasonable stops and detentions and use of excessive force in violation of the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983; (4) Count IV on behalf of Plaintiffs Michael Brown, Sr., and Lesley McSpadden against Defendant Wilson for a substantive due process violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983 for depriving Plaintiffs of their right to a familial relationship with Michael Brown, Jr.; (5) Count V on behalf of Plaintiffs Michael Brown, Jr., and Lesley McSpadden against Defendant City alleging Defendant City's custom, policy, pattern, or practice caused a substantive due process violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983 by depriving Plaintiffs of their right to a familial relationship with Michael Brown, Jr.; and (6) a Fourteenth Amendment Equal Protection claim.[7]  These counts represent Plaintiffs' claims for relief in suffering three injuries: (1) the fatal injury suffered by their son, (2) the violation of their alleged constitutional right to a familial relationship with their son, and (3) the imminent harm presented by the use of policing practices that demean, disregard, or underserve Defendant City's African-American population.  This order addresses Plaintiffs' standing for requesting injunctive relief; whether Plaintiffs' sufficiently pled their asserted claims was addressed in the prior Memorandum and Order issued by the Court [ECF No. 28].

    Plaintiffs argue they have properly alleged an injury-in-fact for Article III standing purposes for their requested injunctive relief, relying on the Supreme Court's disjunctive

---

[7] The Count numbers are stated as they appear in Plaintiffs' Amended Complaint [ECF No. 20].  Plaintiffs' equal protection claim is not asserted in a specific count.  The Court shall order Plaintiffs to specifically indicate their claim for alleged violations of the Equal Protection Clause of the Fourteenth Amendment under a separate numbered count.

language requiring the plaintiff  "show that he 'has sustained or is immediately in danger of

sustaining some direct injury'"  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).  Plaintiffs

are correct in their assertion the *Lyons* Court applied disjunctive language in its evaluation of

whether Plaintiffs generally have pled an injury-in-fact sufficient for Article III standing.

However, "standing is not dispensed in gross."  *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).

Instead, plaintiffs must "demonstrate standing separately for each form of relief sought."

*Friends of Earth Inc., v. Laidlaw Envtl. Serv. (TOC) Inc.*, 528 U.S. 167, 185 (2000).  As such,

the Court will discuss each of Plaintiffs' alleged injuries in turn.

### A.  Fatal Injury Suffered by Michael Brown, Jr.

Plaintiffs have sufficiently pled an actual, concrete, and particularized injury in the fatal

injury suffered by their son to receive monetary damages.  *Lujan v. Defenders of Wildlife*, 504

U.S. 555 (1992).  Plaintiffs have likewise pled extensive facts alleging this fatal injury is the

direct and immediate result of "Defendant City's policy, custom, or practice of … engaging in

discriminatory conduct aimed at the African-American community resulting in disparate

treatment . . . ." [ECF No. 20].  For other types of relief, these alleged facts are sufficient to

satisfy the requirement of causation for Article III standing purposes.  However, to gain

injunctive relief, Plaintiffs must allege more than a past injury.  Injunctive relief is granted for

the purpose of altering future conduct affecting individuals or property in the future.  When

looking to the future, a past injury, such as Michael Brown Jr.'s death, cannot satisfy injury in

fact.  As found in *Lyons*, though the victim "may have been illegally [harmed] by the police . . .

affording [plaintiff] standing to claim damages against the individual officers and perhaps

against the City, [it] does nothing to establish a real and immediate threat" that would suffice to

establish Article III standing for the purpose of seeking injunctive relief for future actions.  461

U.S. at 105 (1983).[8]  Plaintiffs' injury has already occurred and is not a threat of future injury, which is required to establish standing for injunctive relief.

In *Park v. Forest Service of the United States*, plaintiff, a member of a group which periodically held gatherings in various national forests, filed suit against the United States Forest Service alleging the Forest Service employed an unconstitutional checkpoint on a forest road that was targeted against her group.  205 F.3d 1034, 1036 (8th Cir. 2000).  Plaintiff sought injunctive relief asking the district court to enjoin the Forest Service from using certain types of checkpoints which target her group.  *Id*.  The Eighth Circuit observed, parties requesting injunctive relief must show they face a threat of ongoing or future harm to establish standing.  *Id*. at 1037.  Citing *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974), the Eighth Circuit stated past exposure to illegal conduct does not in itself show a present case or controversy for injunctive relief.  *Id*.  The Eighth Circuit held the plaintiff lacked standing because she failed to show there was a significant probability the Forest Service would use an unconstitutional checkpoint in the future.  *Id*. at 1040.  Similarly here, allegations of the death of Michael Brown, Jr. are insufficient to gain standing for injunctive relief.  Plaintiffs seek to impose upon the City the power of the federal court to regulate and oversee activities and procedures of the City, its police department, and officers by gaining injunctive relief.  But it is clear, past conduct and past injuries will not suffice to gain injunctive relief which extends into the future.  The injury of Michael Brown, Jr.'s death is unable to establish injury in fact for the purposes of establishing standing for injunctive relief.

---

[8] An in-depth analysis and discussion of *Lyons* is *infra* in the Court's discussion of Plaintiffs' imminent harm from discriminatory police actions.

Furthermore, even if this allegation conferred standing to Plaintiffs to seek injunctive relief, it would nonetheless remain an improper remedy.  In order to obtain a permanent injunction,

> [a] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury, (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Monsanto Co. v. Geerston Seed Farms*, 561 U.S. 139, 156-57 (2010) (citing *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).  The burden of proving the need for an injunction rests with the plaintiff.  *Id.* at 158.

It is well-settled law, compensatory damages are available and adequate remedies at law exist in 42 U.S.C. § 1983 causes of action alleging the improper use of lethal force.  *See*, *e.g.*, *Westcott v. Crinklaw*, 133 F.3d 658 (8th Cir. 1998) (holding award of nominal damages was in clear error when the plaintiff proved actual damages for death resulting from use of excessive force, remanding for a new trial); *Carey v. Piphus*, 435 U.S. 247 (1978) (denoting the purpose of damage awards in § 1983 cases as being compensatory in nature).  Therefore, although Plaintiffs may seek a remedy at law for the loss of their son under pending claims, injunctive relief is not the proper avenue to redress this injury due to the adequacy of other remedies at law, notably compensatory monetary damages.

## B.  Loss of Familial Relationship

Plaintiffs' second alleged injury is the loss of their constitutional rights to a familial relationship with their deceased son.  Plaintiffs have again sufficiently pled an actual, concrete, and particularized injury on the issue of standing to seek compensatory damages.  *Lujan*, 504 U.S. 555.  As Defendants note in the further briefings submitted to the Court [ECF No. 23],

when the injury claimed is personal to the plaintiff, there is "little question that the government action or inaction has caused injury . . . ." *Id.* at 561-62 (internal citations omitted).  However, this alleged injury does not meet the standing threshold for injunctive relief, for the same reasons Michael Brown, Jr.'s fatal injury does not meet the threshold.[9]

### C.  Imminent Harm from Discriminatory Police Practices

Plaintiffs' third alleged injury is the future harm potentially faced by themselves and other African-American citizens of Ferguson from discriminatory police customs and practices. A thorough analysis of Supreme Court precedent and, in particular, *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) is needed to understand whether Plaintiffs have established standing for injunctive relief.

In *O'Shea v. Littleton*, nineteen individuals, on behalf of themselves and a class of citizens, brought suit against the State's Attorney, his investigator, the Police Commissioner, a Magistrate Judge, and an Associate Judge, alleging they engaged in conduct, and continued to engage in conduct, that deprived plaintiffs of rights secured by the First, Sixth, Eighth, Thirteenth, and Fourteenth Amendments. 414  U.S. 488, 490 (1974).  Plaintiffs alleged criminal laws and procedures were deliberately applied more harshly to black residents and inadequately applied to white residents.  *Id.* at 491-92.  They claimed unlawful procedures were imposed in setting bond in criminal cases.  *Id.*  They also alleged higher sentences and harsher conditions were impermissibly imposed on plaintiffs, and plaintiffs were discriminatorily required to pay for a trial by jury more often, when charged with violations of city ordinances, which carried fines and possible jail penalties.  *Id.*  Plaintiffs did not seek monetary damages, but instead sought to enjoin the practices.  *Id.* at 492.

---

[9] The Court acknowledges this right was properly alleged, but has not determined at this time this represents a valid right for qualified immunity purposes.  The Court reserves the right to make that determination at a later date.

The United States Supreme Court held "[t]he complaint failed to satisfy the threshold requirement impose by Art. III of the Constitution that those who seek to invoke the power of federal courts must allege an actual case or controversy." *Id.* at 493 (citations omitted).  The Court stated "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *Id.* at 495-96.  Further, the Court found "it seems to us that attempting to anticipate whether and when these respondents will be charged with crime and will be made to appear before either petition takes us into the area of speculation and conjecture." *Id.* at 497.  The Court concluded federalism and other legal requirements for injunctive relief proscribed relief to plaintiffs.  *Id.* at 499-504.

Next, the United States Supreme Court decided *Rizzo v. Goode*.  423 U.S. 362 (1976).  In *Rizzo*, individuals and various organizations proceeded as a class action in a suit against the Mayor of Philadelphia, the Police Commissioner and others, alleging a pattern of illegal and unconstitutional treatment of minority citizens by police.  *Id.*  The District Court granted injunctive relief but the Supreme Court reversed.  *Id.* at 366.  The Supreme Court applied the holding in *O'Shea* finding the observations in *O'Shea* "apply here with even more force, for the individual respondents' claim to 'real and immediate' injury rests not upon what the named petitioners might do to them in the future such as set a bond on the basis of race but upon what one of a small, unnamed minority of policemen might do to them in the future because of that unknown policeman's perception of departmental disciplinary procedures." *Id.* at 372.  Further, the Court found this was more attenuated than the allegations of future injury which were found to be insufficient in *O'Shea*.  *Id.*  The Court in *Rizzo* again held past exposure to illegal conduct does not in and of itself show a present case or controversy so as to allow injunctive relief.  *Id.*

12

In *Lyons*, plaintiff filed a complaint against the City of Los Angeles and four of its police officers for their allegedly unauthorized use of a choke hold in restraining him.  He sought damages and injunctive relief barring the use of choke holds.  He alleged that "the city's police officers, 'pursuant to the authorization, instruction, and encouragement of defendant City of Los Angeles, regularly and routinely apply these choke holds in innumerable situations where they are not threatened by the use of any deadly force whatsoever,' that numerous persons have been injured as the result of the application of the chokeholds, that Lyons and others similarly situated are threatened with irreparable injury in the form of bodily injury and loss of life, and that Lyons 'justifiably fears that any contact he has with Los Angeles police officers may result in his being choked and strangled to death without provocation, justification or other legal excuse.'" *Id.* at 98.  The Court ruled this was not enough.

First, the Court held that Lyons, having been illegally choked, was not enough to establish a "real and immediate threat" that he would again be stopped by police and again illegally choked, nor is the additional allegation sufficient that this routinely occurs to other citizens.  *Id.* at 105.  The Court held Lyons needed to allege either "(1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter . . . or, (2) that the City ordered or authorized police officers to act in such manner." *Id.* at 106.  Even though Lyons alleged in his complaint the City authorized the use of choke holds in situations where deadly force was not threatened, the Court stated he did not indicate why he might be "realistically threatened by police officers who acted within the strictures of the City's policy." The Court explained "any future threat to Lyons from the City's policy or from the conduct of police officers would be no more real than the possibility that he would again have an encounter with police and that either he would illegally resist arrest . . . or the officers would disobey their

instructions and again render him unconscious without any provocation." *Id.* Further, the Court stated the chance Lyons would be stopped for a traffic violation and subjected to an illegal chokehold again was not sufficient to make a case for equitable relief. *Id.* at 108.

The situation before this Court cannot be differentiated from that before the Supreme Court in *Lyons*. Plaintiffs have alleged Defendant City authorized officers to act in a discriminatory manner, but they have not established more than a mere possibility they will again encounter police and face discrimination. Further, Plaintiffs do not allege how the policies are facially discriminatory nor do they allege the harm that would result from officers operating within the confines of the Defendant City's policies. Instead, they allege injury to African-American citizens of Defendant City, seeking an injunction forcing the City government to comply with the law. Courts have "repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Allen v. Wright*, 468 U.S. 737, 754 (1984). Such generalized grievances are not sufficient to confer standing upon Plaintiffs to seek injunctive relief.

Plaintiffs state, in their Brief on Defendants' Motion to Dismiss [ECF No. 25], "the argument before the Court at present is not the right vested directly in the children, but the rights vested in Michael Brown, Sr. and Lesley McSpadden as parents who have a constitutional right to their relationship with their children, and the potential for future loss of another child." Plaintiffs' petition continues to make no mention of any children aside from the deceased Michael Brown, Jr. As such, the Court cannot consider the familial rights vested in Michael Brown, Sr. and Lesley McSpadden for their surviving children. *Hamm v. Rhone-Poulenc Roer Pharm., Inc.*, 187 F.3d 941 (8th Cir. 1999). Furthermore, even if these allegations did appear in the complaint, the Court would be forced to conclude that they too do not confer on Plaintiffs

14

Article III standing to seek declaratory or injunctive relief.  *See Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (Plaintiff's son was shot and killed by police while attempting to escape arrest and Plaintiff alleged he has another son who could face the same situation and the Court held "[s]uch speculation is insufficient to establish the existence of a present, live controversy.").  The holding in *Lyons* is applicable here.  As a result, the Court will grant Defendants' Motion to Dismiss, dismissing Plaintiffs' request for declaratory and injunctive relief in this matter for lack of standing.

### D. Federalism

In its previous Memorandum and Order [ECF No. 19], the Court raised its concern about the significant federalism issue discussed in *Lyons* on the appropriate balance between state and federal authority when federal courts are considering imposing injunctions on state agencies. The Court provided both parties an opportunity to present arguments in briefs to the Court regarding this issue.

As the Supreme Court noted in *Lyons*, "recognition of the need for a proper balance between state and federal authority counsels restraint in the issuance of injunctions against state officers engaged in the administration of the states' criminal laws" in situations where the plaintiff cannot show that they are in danger of immediately suffering injury.  461 U.S. 95, 112 (1983).  This concern about federal courts intruding on the internal affairs of state governments was also raised in *Rizzo v. Goode*, stating "where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'" 423 U.S. 362, 378 (1976) (citing *Stefanelli v. Minard*, 342 U.S. 117, 120 (1951)).

These cases advise caution on behalf of federal courts when seeking to impose injunctive relief upon state governmental authorities, particularly in the case where there remain alternative remedies at law.  *See, e.g.*, *O'Shea v. Littleton*, 414 U.S. 488, 503 (1974) (discussing the deterrent effect of the law despite the unavailability of injunctive relief for plaintiffs seeking to enjoin allegedly discriminatory state court practices); *Lyons*, 461 U.S. 95, 113 (1983) (noting the alternative remedies available to Lyons for the injury allegedly suffered at the hands of state police officials).

As *Lyons* concluded, "state courts need not impose the same standing or remedial requirements that govern federal court proceedings.  The individual states may permit their courts to use injunctions to oversee the conduct of law enforcement authorities on a continuing basis.  But this is not the role of a federal court . . ." 461 U.S. 95, 113 (1983).

This Court will not inject itself into the affairs of the state government's administration of its own laws in the interest of maintaining the appropriate balance between state and federal authority in this area.

## IV.    CONCLUSION

Plaintiffs' prayer for injunctive relief is dismissed for lack of Article III Standing, as their first claimed injury fails to allege an injury in fact required for injunctive relief.  Additionally, for the same reasons, Plaintiffs cannot meet the *Lyons* Court's standard to seek injunctive relief through their second claimed injury.  Finally, allegations of imminent harm from discriminatory police practices are insufficient to gain federal relief in the form of an injunction.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss Plaintiffs' request for injunctive relief is **GRANTED.**

16

**IT IS FURTHER ORDERED** that Plaintiffs shall file an amended complaint which outlines and specifically delineates their claims of violations of the Equal Protection Clause of the Fourteenth Amendment as a separate numbered count within twenty days of the date of this order.  The amended complaint shall not include any additional factual allegations.

Dated this 9th Day of December, 2015.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE