IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL BROWN, SR., et.al, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 4:15-cv-00831-ERW |
| ) | |
| CITY OF FERGUSON, MISSOURI, et.al. ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO QUASH A SUBPOENA
DIRECTED TO THE ST. LOUIS COUNTY POLICE DEPARTMENT**

The St. Louis County Department of Police ("SLCPD") submits this memorandum in support of its motion to quash the subpoena commanding the SLCPD to produce un-redacted records and physical evidence regarding the investigation of *State of Missouri v. Darren Wilson*.

**INTRODUCTON**

The shooting of Michael Brown on August 9, 2014 by City of Ferguson Police Officer Darren Wilson sparked anger and violence which spread throughout the nation and continues to this day. Witness Dorian Johnson claimed that Officer Wilson murdered Brown as he surrendered. That narrative drove intense media attention, leaks, hacking, riots, threats, violence and destruction.

On August 12, 2014, an international group of unnamed computer hackers, known as Anonymous, crashed Ferguson's website. Meanwhile, activists and protestors scoured the internet for personal and private financial information on hundreds of police officers, mayors, judges and officials, including SLCPD. Anonymous issued ultimatums and then started publicly releasing personal information on these police officers and others. Just after midnight on August 12, persons posting as @TheAnonMessage posted a photo of SLCPD Chief Jon Belmar's home,

as well as his address, phone number, and the names of his wife and children. Minutes later, someone posted photos allegedly portraying his son, his wife, and his daughter.[1] TheAnonMessage threatened: "Jon Belmar, if you don't release the officer's name, we're releasing your daughter's info. You have one hour."[2]

This was just the beginning of the threats and attacks on the SLCPD. Hackers crashed St. Louis County's e-mail servers.[3] While SLCPD was investigating the shooting of Michael Brown, someone hacked into cell phones used by SLCPD detectives for police business, and sent disturbing counterfeit text messages.[4] During this same time period, someone hacked into the home computer system of a family member of a SLCPD detective, causing the computer screen to flash: "We know you are a white police officer and we are going to kill you."[5]

Anonymous leaks to the media exacerbated the volatile situation. The official St. Louis County autopsy report was leaked to the St. Louis Post Dispatch.[6] Four days after the Post-Dispatch published an article that named a SLCPD officer who was involved in the investigation, a car full of persons with criminal histories drove slowly through his secluded neighborhood and pointed their fingers at his house.[7] During grand jury proceedings, unidentified sources leaked to the St. Louis Post-Dispatch what they described as Officer Darren Wilson's grand jury testimony, which further inflamed angry protestors.[8]

The grand jury, over the span of three months, heard more than 5,000 pages of testimony

---

[1] Exhibit B, Affidavit of Jon Belmar, filed with SLCPD's Motion to Quash.
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] Byers,Christine (October 22, 2014), "Official autopsy shows Michael Brown had close-range wound to his hand, marijuana in system," St. Louis Post-Dispatch.
[7] Exhibit B, Affidavit of Jon Belmar.
[8] Coscarelli, Joe (October 23, 2014), "Justice Department Not at All Pleased With Michael Brown Leaks," *New York*.

from 60 witnesses. Following the grand jury announcement, riots and violence broke out in St. Louis County and cities across the United States. Within minutes after the grand jury decision not to indict Officer Wilson was announced, Michael Brown's stepfather, Louis Head, turned to a crowd of demonstrators and yelled "Burn this bitch down," according to a New York Times video.[9] Businesses in Ferguson and beyond were looted and fires set by angry protestors. Many people were injured during these riots and protests, including the SLCPD officers that were on the scene when this violence erupted.

From the moments after the shooting, through the November 24, 2015 announcement of the St. Louis County grand jury's decision and beyond, SLCPD detectives dedicated themselves to the investigation. From the beginning, these SLCPD detectives were met at the scene by a hostile crowd, chants of "kill the police," and gunfire. In that hostile and dangerous environment, SLCPD detectives documented key physical evidence and worked around the clock, tracking down and interviewing scores of witnesses at all times of the day and night.

Against this backdrop of leaks, media attention, and violence, the subpoena orders SLCPD to release an un-redacted copy of the entire investigative file, which includes thousands of pages of documents and a myriad of photographs, video/audio recordings and pieces of physical evidence gathered by SLCPD, the FBI, and other law enforcement agencies.

As set forth below, the subpoena should be quashed because it (a) requires disclosure of redacted information that would endanger the safety of witnesses, law enforcement personnel and their families; (b) is unreasonably broad and unduly burdensome; and (c) includes materials and information that are protected from disclosure by the work product doctrine and/or the attorney client privilege, the law enforcement privilege, federal and state grand jury secrecy laws

---

[9] Sanchez, Ray (November 26, 2014), "Michael Brown's stepfather at rally: 'Burn this bitch down!'", CNN.

and the Missouri Sunshine Law.

## ARGUMENT

**A.     Safety of Witnesses, Officers and Families.**

Considering the many episodes of violence and destruction, there is no question that the subpoena requires disclosure of redacted information that is likely to endanger the safety of witnesses, law enforcement personnel and their families. The redaction of names and other identifying information is expressly mandated by Section 610.100.3 RSMo:

> [I]f any portion of a record or document of a law enforcement officer or agency, other than an arrest report, which would otherwise be open, **contains information that is reasonably likely to pose a clear and present danger to the safety of any victim, witness…or other person**; or jeopardize a criminal investigation, including records which would disclose the identity of a source wishing to remain confidential or a suspect not in custody; or which would disclose techniques, procedures or guidelines for law enforcement investigations or prosecutions, **that portion of the record shall be closed and shall be redacted from any record made available pursuant to this chapter**.

(Emphasis Added)

Redacted copies of the investigative report (which includes word for word transcripts of taped witness interviews) have been provided to attorneys for the parties. Release of un-redacted materials would endanger lives and property. Although a protective order might slightly reduce the danger, no protective order can eliminate the risk that identities will be leaked and/or hacked and posted on the internet, thereby causing irreversible harm and danger to the persons whose health and safety the order is intended to protect. Even if the information is not leaked during discovery, there is no conceivable way to protect the identity of persons compelled to testify at the jury trial in this high profile civil case. Consequently, the only way to ensure safety is to redact the identifying information, as required by the Missouri Sunshine Law.

**B.     The Subpoena is Overbroad and Unduly Burdensome.**

The subpoena is overbroad and unduly burdensome, requiring police personnel to take time away from their other law enforcement duties to spend countless hours copying thousands of pages of documents and a myriad of photographs, video/audio recordings and physical evidence. If the subpoena is not quashed in its entirety, Defendants should be required to compensate SLCPD, in advance, for the actual cost of production.

**C.     The Subpoena Requires Disclosure of Privileged Information and Materials.**

The SLCPD worked closely with the St. Louis County Office of the Prosecuting Attorney ("Prosecuting Attorney") and federal agents to assemble and analyze evidence to present to the grand jury.  As a result, the subpoenaed SLCPD investigative file contains materials and information protected by the work product doctrine and/or the attorney client privilege, the law enforcement privilege, grand jury secrecy laws and the Missouri Sunshine Law.  In support of this argument, the SLCPD adopts and incorporates by reference the motions, affidavits, memorandums, objections and replies filed in this case by the Prosecuting Attorney [ECF Nos. 41, 42, 45,  and 56] and the Statement of Interest of the United States [ECF  No. 67].

## **CONCLUSION**

For the foregoing reasons, the Court should quash the subpoena.

**PETER J. KRANE**
**COUNTY COUNSELOR**

/s/ Cynthia L. Hoemann
Cynthia L. Hoemann, #28245
Associate County Counselor
choemann@stlouisco.com
Linda S. Wasserman, #31569
Assistant County Counselor
lwasserman@stlouisco.com
41 South Central Avenue
Clayton, Missouri  63105
(314) 615-7042
Fax: (314) 615-3732

Attorneys for Movant St. Louis County
Police Department

## **CERTIFICATE OF SERVICE**

    I certify that the foregoing was filed with the Eastern District of Missouri Document Filing System CM/ECF which sent notification of such filing to all attorneys of record in this case.

/s/ Cynthia L. Hoemann